**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Hilario Aguirre,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-14-2161-PHX-GMS (JFM)<br><br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Kingman, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on September 26, 2014 (Doc. 1).  On January 28, 2015, Respondents filed their Limited Answer (Doc. 13).   Petitioner filed a Reply on March 2, 2015 (Doc. 14).  On June 17, 2015, Respondents filed a Supplemental Answer (Doc. 16).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A. FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

On October 19, 2010, Petitioner was indicted in Pinal County Superior Court on charges of conspiracy, illegally conducting an enterprise, possession of marijuana for sale, and transportation of marijuana for sale.  (Exhibit A, Indictment.)  (Exhibits to the Answer, Doc. 13, are referenced herein as "Exhibit ___.")  The charges arose out of the

1

investigation of a drug smuggling operation, including surveillance resulting in observations of Petitioner going to and leaving a rural property in his name on which some five thousand pounds of marijuana were later found after a man doing yard work on the property consented to a search.  (Exhibit I, Mem. Dec. at 2-4.)

Counsel filed a Motion to Suppress Evidence (Exhibit K) arguing that the search of the property was not supported by a warrant or valid consent.  The trial court conducted an evidentiary hearing on the motion, made factual findings, heard arguments of counsel, and denied the motion.  (Exhibit L, M.E. 3/27/12.)

Following a jury trial, Petitioner was convicted on all but the transportation for sale charges.  (Exhibit I, Mem. Dec. at 2.)  Petitioner was sentenced to concurrent, aggravated sentences, the longest of which were 20 years.  (*Id.*; Exhibit D, Sentence.)

**B. PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a direct appeal, arguing: (1) the motion to suppress had been wrongly denied; and (2) Petitioner's sentence was improperly aggravated upon factors which were essential elements of the offense.  (Exhibit F, Opening Brief.)  The Arizona Court of Appeals rejected both claims and affirmed Petitioner's convictions and sentences.  (Exhibit I, Mem. Dec.)  Petitioner did not seek further review, and the appellate court's mandate was issued on May 29, 2013.  (Exhibit J, Mandate.)

**C.  PROCEEDINGS ON POST-CONVICTION RELIEF**

Petitioner then filed a Notice of Post-Conviction Relief (Exhibit M).  Counsel was appointed, who ultimately filed a Notice of No Colorable Claim.  (Exhibit P, order 12/2/13 at 2.)  Petitioner then filed his *Pro Per* Petition for Post-Conviction Relief (Exhibit N).  Petitioner argued:

(1) (a) illegal search under the Fourth Amendment of the U.S. Constitution and other authorities; (b) failure to prove Petitioner's possession of the marijuana in violation of due process under the Fifth Amendment of the U.S. Constitution and

other state authorities; and (c) denial of the right to an impartial jury under the Sixth Amendment of the U.S. Constitution and other state authorities.  (Exhibit N, PCR Pet. at 4, *et seq.*);

(2) violation of due process under the Fourth and Fifth Amendment of the U.S. Constitution and other state authorities by: (a) an unauthorized search and (b) multiplicitous charges in violation of double jeopardy (*id.* at 9 *et seq.*);

(3) illegal search in violation of the Fourth Amendment of the U.S. Constitution and other state authorities based upon (a) an unauthorized protective sweep, and (b) information from a confidential informant who Petitioner was not permitted to confront (*id.* at 12 *et seq.*);

(4) violations of the Sixth and Fourteenth Amendments of the U.S. Constitution and other state authorities based upon a sentence to an aggravated term (*id.* at 14 *et seq.*);

(5) violations of the Fourteenth Amendment of the U.S. Constitution and other state authorities based upon: (a) the prosecution's failure to disclose the absence of Petitioner's fingerprints; (b) denial of expert witnesses; and (c) improper admission of hearsay (*id.* at 16 *et seq.*); and

(6) violations of the Sixth Amendment of the U.S. Constitution and other state authorities based upon the denial of a fair and impartial jury (*id.* at 17 *et seq.*).

In disposing of Petitioner's PCR petition, the PCR court identified the following list of claims:

> The Petitioner's issues set forth in his pro-per petition consist of the following:
> 1. There was an unlawful search of the property.
> 2. That the jury was not impartial because one juror saw him being escorted by the Sheriff's deputy.
> 3. Law Enforcement Officers lied on the stand about their interview with the Petitioner.
> 4. That tenant-guest law invalidated the consent.
> 5. The indictment was multiplicitous.
> 6. There was an improper finding of aggravating factors.
> 7. The court improperly denied his motion for directed verdict.
> 8. The State concealed evidence that no fingerprints of the

1    Petitioner were found on any of the marijuana which he designates
     as newly discovered evidence.

2    (Exhibit P, Order 12/2/13 at 2.)  The PCR court found that the arguments in 1 through 7

3    "are precluded as either having been decided by the. Court of Appeals or by the

4    Petitioner's failure to raise them in the Court of Appeals." (*Id.* at 3.) The PCR court

5    rejected the eighth argument on the merits.  (*Id.*)

6        Petitioner filed a Motion for Review and Reconsideration, which was denied on

7    July 15, 2014.  (Exhibit Q, M.E. 7/15/14.)

8        On August 15, 2014, Petitioner filed a "Notice of Filing Petition for Review and

9    Request for Extension of Time" (Exhibit R). That filing simply provided: "Comes noaw,

10   Hilario Aguirre, pro per, and hereby gives notice of filing Petition for Review in the

11   Arizona Appellette [sic] Court, and request for extension of time to file Petition." (*Id.* at

12   1.)   The plain import of this filing was to seek an extension of time to file a petition for

13   review, not that the filing itself amounted to such a petition.  Petitioner asserted in the

14   instant habeas petition that he sought review of his first PCR petition by the Arizona

15   Court of Appeals.  (Pet. Doc. 1 at 5.)  Respondents assert that no Petition for Review was

16   ever filed with the PCR court or the Arizona Court of Appeals.  (Answer, Doc. 13 at 4.)

17   Petitioner does not oppose that contention in his reply.  "The allegations of a return to

18   the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus

19   proceeding, if not traversed, shall be accepted as true except to the extent that the judge

20   finds from the evidence that they are not true."  28 U.S.C. § 2248.  The undersigned

21   finds no reason to reject Respondents allegation that no petition for review was filed, and

22   thus accepts the allegation as true.

23

24   **D.  PRESENT FEDERAL HABEAS PROCEEDINGS**

25       **Petition** - Petitioner commenced the current case by filing his Petition for Writ of

26   Habeas Corpus pursuant to 28 U.S.C. § 2254 on September 26, 2014 (Doc. 1).

27   Petitioner's Petition asserts the following four grounds for relief:

28       (1) the trial court violated Petitioner's constitutional rights by not dismissing the case

4

when a juror committed misconduct (Petition, Doc. 1 at 6);

(2) the trial court violated Petitioner's constitutional rights by imposing an excessive sentence as a result of failure to consider mitigating circumstances (*id.* at 7);

(3) the search of the Petitioner's property without a warrant violated his constitutional rights (*id.* at 8); and

(4) Petitioner received ineffective assistance of trial counsel when counsel failed to suppress the evidence and failed to move to dismiss based on juror misconduct (*id.* at 9).

**Response** - On January 28, 2015, Respondents filed their Response ("Limited Answer") (Doc. 13).  Respondents argue that Petitioner failed to properly exhaust his state remedies on Grounds 1, 2, and 4, and they were either procedurally barred or are now procedurally defaulted.  Respondents argue that Ground 3 is an exclusionary rule claim, barred from habeas review under *Stone v. Powell*, 428 U.S. 465 (1976).

**Reply** - On March 2, 2015, Petitioner filed a Reply (Doc. 14).  Petitioner argues that he fairly presented his claims to the state courts, any failure to do so was caused by his untrained, *pro se* status, language barrier, or the ineffective assistance of trial and appellate counsel.  Petitioner further argues that his claims are meritorious.

**Supplements** – On June 4, 2015, the Court observed that although vaguely worded, Ground 1 appeared to have been presented in "Colorable Claim 6 in Petitioner's PCR petition, and the PCR court found that the claim was or could have been raised before, resulting in exhaustion.  Respondents were directed to supplement their Answer to address the issues, and the merits of Ground 1.  A deadline for a supplemental reply was set.  (Order 6/4/15 Doc. 15.)

**Supplemental Answer** - On June 17, 2015, Respondents filed their Supplemental Answer (Doc. 16) addressing the merits of Ground 1, asserting that the record demonstrated the defendant was not observed shackled, and Petitioner fails to show prejudice from any purported brief observance, particularly in light of the curative instructions to the jury.

**Supplemental Reply** – On June 26, 2015, Petitioner file a Motion for Extension of Time (Doc. 17), seeking to extend the time to file a supplemental reply. The motion was granted and Petitioner given through July 20, 2015 to file his supplemental reply. (Order 7/2/15, Doc. 18.) That time has passed, and Petitioner has not supplemented his reply.

## III. APPLICATION OF LAW TO FACTS

### A.  EXHAUSTION, PROCEDURAL BAR, and PROCEDURAL DEFAULT

Respondents argue that most of Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state grounds, and thus are barred from federal habeas review.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona

Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

## 2. Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts. Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P. 32.4. (Answer, Doc. 13 at 7.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal. Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P.

32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding."  *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right."  Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally."  *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance.  *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for

purposes of the rule).   That time has long since passed.

It is true that Petitioner filed a motion to extend the time for a petition for review (Exhibit R), but Petitioner makes no argument that such motion was granted, or that, if granted, the extended time has not long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). See Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar). Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.   The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.   Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no

application.   Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief.   Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court.

Review of Existing PCR Proceeding – Petitioner filed a PCR petition with the PCR court, but did not seek review by the Arizona Court of Appeals.  Under Arizona Rule of Criminal Procedure 32.9(c), petitions for review to the Arizona Court of Appeals must be filed within thirty days of the trial court's decision on the PCR petition.  That time has long since passed.

**3.  Procedural Bar on Independent and Adequate State Grounds**

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id.* at 584-585.

#### 4. Application to Petitioner's Claims

**a.  Ground One** - In Ground One of his Petition, Petitioner argues the trial court violated Petitioner's constitutional rights by not dismissing the case when a juror committed misconduct. (Petition, Doc. 1 at 6.)  Petitioner asserted that this claim was raised on direct appeal and in his first PCR proceeding.  (*Id.*)

Respondents argue that Petitioner raised in his PCR petition a claim of juror misconduct based upon one juror seeing Petitioner being escorted by the sheriff's deputy.   However, Respondents argue that the PCR court dismissed the claim as "precluded because Aguirre could have raised it on direct appeal."  (Answer, Doc. 13 at 7.)

Petitioner replies to these contentions directly only by asserting that his claims were presented to the PCR court.

Indeed, this claim was not one of two claims presented by Petitioner on direct appeal.  (*See* Exhibit F, Opening Brief.)  However, in "Colorable Claim 6" in his PCR petition, Petitioner did assert a Sixth Amendment violation based upon the juror seeing Petitioner being placed in handcuffs and escorted away.  (Exhibit N, PCR Pet. at 17-18.)

To the extent that Petitioner now asserts that same claim in his vaguely worded Ground 1, the claim was fairly presented.  To the extent that Petitioner now asserts a different claim, it was not fairly presented, and for the reasons discussed in subsection 2, hereinabove, the claim is now procedurally defaulted.

Respondents argue that even if the claim now presented is that in Petitioner's PCR claim 6, it was procedurally barred by the PCR Court as having been waived by failure to present it on direct appeal and thus is now barred from habeas review. However, the PCR court did not so hold.  To the contrary, the PCR court found the claim in Colorable Claim 6 to be "precluded as either having been decided by the. Court of Appeals or by the Petitioner's failure to raise them in the Court of Appeals." (Exhibit P,

Order 12/2/13 at 3.)  The PCR court did not elucidate which applied to which claims.

A finding of preclusion, i.e. that the claims have been raised before, "does not provide a basis for federal courts to apply a procedural bar." *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996). Where an Arizona Court asserts both conditions apply to a group of claims without delineating which applied to which, it "did not clearly base its decision on independent and adequate state law grounds." *Id. See also Calderon v. U.S. Dist. Court for Eastern Dist. of California* (Bean), 96 F.3d 1126, 1131 (9th Cir. (Cal.) 1996); *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. (Nev.) 2002) ("By failing to specify which claims were barred for which reasons, the Nevada Supreme Court 'did not clearly and expressly rely on an independent and adequate state ground.'"); and *Koerner v. Grigas*, 328 F.3d 1039, 1053 (9th Cir. (Nev.) 2003). To avoid habeas review, a state court decision must "clearly and expressly rely on an independent and adequate state ground." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

This Court cannot look beyond the pronouncement of the PCR Court, to the briefs and decision on direct appeal before the Arizona Court of Appeals, and conclude that the true decision was one that the claims had not been raised, were thereby waived, and thus procedurally barred on that ground.  In *Cone v. Bell*, 556 U.S. 449 (2009), the Court was faced with a state appellate decision which disposed of a federal claim on the mistaken basis that it had been previously presented. The record reflected that the claim had clearly not been presented or passed on in any prior proceeding. Nonetheless, the Supreme Court held: "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review…When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted." 556 U.S. at 466-67. The Court further rejected the state's request to treat the rejection as a procedural bar based upon the state's waiver rule. "Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims, we have no concomitant duty to apply state procedural

bars where state courts have themselves declined to do so. The Tennessee courts did not hold that Cone waived his Brady claim, and we will not second-guess their judgment." 556 U.S. at 468-69.

It is true that in his dissent in *Koerner*, Judge Beezer argued that the reference to an "ambiguous" order "should be understood in light of the state court opinion and the record in that case, rather than looking solely to the face of the state court's opinion." 328 F.3d 1039, 1056 (Beezer, J. dissenting). However, Judge Beezer's dissent plainly acknowledged the import of the majority decision in *Koerner*:

> Today's opinion holds that a federal court may only look to the state court opinion at issue in determining whether a state court opinion relies on a procedural default. If a state court opinion is ambiguous on its face, today's opinion makes it impossible to find a procedural default because any such state court opinion does not "clearly and expressly rely on an independent and adequate state ground." *Valerio v. Crawford, 306 F.3d 742, 773 (9th Cir.2002) (citation omitted).*

*Koerner*, 328 F.3d at 1056 (Beezer, J. dissenting). Thus the portion of Judge Beezer's dissent referencing consideration of the record was not a statement of what the law in the Ninth Circuit is, but Judge Beezer's assertion of what it ought to be. *But see McElyea v. Schriro*, 2009 WL 222375, CV-06-0884-PHX-SMM(HCE) (D. Ariz. 2009) (looking beyond state court opinion, based on pre-*Koerner* 9th Circuit cases doing so, citing *Koerner*, but without noting Beezer's dissent). The undersigned knows of no authority permitting this Court to reject Judge Beezer's analysis of the majority's holding in *Koerner*, nor the effect of that holding.

The opinion of the PCR court is ambiguous on its face, proposing two mutually exclusive reasons for disposing of the claim. According to *Cone* and *Koerner*, this Court is not free to look beyond that ambiguity and attempt to ascertain the true basis for disposing of the claim.

Accordingly, under the decision of the PCR court, this Court must assume that Petitioner's claim in "Colorable Claim 6" was presented on direct appeal to the Arizona Court of Appeals, and thus Petitioner's state remedies on that claim have been

13

adequately exhausted.

**b. Ground Two** – In his Ground 2, Petitioner argues that the trial court violated Petitioner's constitutional rights by imposing an excessive sentence as a result of failure to consider mitigating circumstances.  (Petition, Doc. 1 at 7.)  The Petition makes no explanation of Petitioner's presentation of this claim to the Arizona Court of Appeals.  (*Id.*)

Respondents argue that Petitioner presented a different state law claim on direct appeal, and that the PCR court deemed a similar claim precluded.  (Answer, Doc. 13 at 9.)  Petitioner does not reply on these contentions.

Not Fairly Presented on Direct Appeal - Indeed, Petitioner's challenge to his sentencing on direct appeal was based not upon a failure to consider mitigating circumstances, but upon a reliance on improper aggravating circumstances.  While new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).  The shift in claims from challenging aggravating factors to mitigating factors is a fundamental alteration.

Moreover, Petitioner's claim on direct appeal was founded solely upon state law arguments.  Failure to so alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. at 366.  While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).

Thus the current claim in Ground 2 was not fairly presented to the Arizona Court of Appeals on direct appeal.

**Presented but Procedurally Defaulted in PCR Proceeding** - In his "Colorable

14

Claim 4" to the PCR court, Petitioner argued violations of the Sixth and Fourteenth Amendments of the U.S. Constitution and other state authorities based upon a sentence to an aggravated term.   (Exhibit N, PCR Pet. at 14 *et seq.*)   In arguing that claim, Petitioner asserted that the trial court "did not address all of the mitigating factors that defendant was entitled to, that supported a presumptive sentence." (*Id.* at 15.)   Petitioner further argued that he was denied a mitigation hearing.  (*Id.*)  Petitioner also argued that the trial court improperly used his prior offense as an aggravating factor.  (*Id.* at 15-16.)

In responding to this claim, the state ignored the arguments concerning mitigation, and cast the claim as only a challenge to the aggravating factors and argued it had been decided on direct appeal.  (Exhibit O, PCR Resp. at  8.)  The PCR court appears to have followed suit, recognizing only a claim that "[t]here was an improper finding of aggravating factors."  (Exhibit P, Order 12/2/13 at 2.)   The PCR court then applied its ambiguous finding that the claims were or could have been raised on direct appeal.

But the claim now raised by Petitioner  is not a challenge to the aggravating factors, but to the mitigating ones (or the lack of their consideration).  That claim was neither recognized nor ruled upon by the PCR court.  Thus the claim cannot be deemed exhausted by virtue of the PCR court's ambiguous ruling.  Instead, it appears that the current claim was fairly presented to the PCR court, and simply overlooked.

Had Petitioner proceeded to seek review from the Arizona Court of Appeals on this PCR claim, his state remedies would be deemed exhausted.  But he did not.  And, for the reasons discussed in section 2 hereinabove, Petitioner may not now do so.  Accordingly, this claim is procedurally defaulted.

**c.   Ground Three** – Respondents do not argue that Ground Three was procedurally defaulted.

**d.  Ground Four** – In his Ground 4, Petitioner argues that he received ineffective assistance of trial counsel when counsel failed to suppress the evidence and failed to move to dismiss bases on juror misconduct.   (Petition, Doc. 1 at 9).  Petitioner argues

that Ground 4 was presented to the Arizona Court of Appeals in his first PCR proceeding.  (*Id.*)

Respondents argue that no claim of ineffective assistance of counsel was raised in Petitioner's direct appeal or PCR proceeding, and that at best Petitioner asserted the claims underlying his claims of ineffective assistance.  (Answer, Doc. 13 at 11.)  Thus, Respondents argue Petitioner's state remedies on this claim are procedurally defaulted and the claim is barred from habeas review.

Indeed, Petitioner did not raise any claim of ineffective assistance of counsel on either direct appeal or in his PCR petition.  To the extent that Petitioner asserted the underlying claims (e.g. the failure to suppress and juror misconduct), the presentation of those claims would not serve to fairly present the related claims of ineffective assistance of counsel.  "While [the ineffective assistance and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts."  *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005).

For the reasons discussed in subsection 2 hereinabove, Petitioner is now precluded from returning to state court on his claims of ineffective assistance, his state remedies are procedurally defaulted, and this ground for relief is barred from habeas review.

**e.  Summary Re Exhaustion** – Based upon the foregoing, the undersigned concludes that Petitioner properly exhausted his remedies as to the portion of Ground One based upon a juror seeing Petitioner being placed in handcuffs and escorted away.

Also based on the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on: (1) the remainder of Ground One, (2) Ground Two, and (3) Ground Four.

**5.  Cause and Prejudice**

If the habeas petitioner has procedurally defaulted on a claim, or it has been

procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues that this Court should find cause to excuse his procedural defaults based on: (1) his untrained, *pro se* status, and language barrier, and (2) the ineffective assistance of trial and appellate counsel.  (Reply, Doc. 14 at 5, *et seq.*)

***Pro Se* Status and Language Barrier** – Petitioner argues he "is a lay person in the law; does not speak or write English, nor is he a United States citizen that has been educated in the knowledge as to the Constitution of the United States or its complex laws."  (Reply, Doc. 14 at 5.)

The "cause and prejudice" standard is equally applicable to *pro se* litigants, *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988); illiterate and unaided, *Hughes*, 800 F.2d at 909, or non-English speaking.  *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988), *cert. denied*, 490 U.S. 1100 (1989).

Moreover, at the time Petitioner's state remedies were being procedurally defaulted, *e.g.* on direct appeal, and in his PCR proceeding, he was represented by

counsel, and thus not dependent upon his own legal prowess or linguistic abilities.

**Ineffective Assistance of Trial and Appellate Counsel** - Petitioner argues he "has fairly presented the issues his defense counsel and direct appeal attorney failed to claim due to their ineffective assistance." (Reply, Doc. 14 at 5.) "Both defense trial and appeal attorneys were ineffective in their work and was a constitutional violation of defendant's /petitioner's rights." (*Id.* at 6.)

Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998). However, "[t]o constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003.) Petitioner has not properly exhausted any claims of ineffective assistance of trial or appellate counsel.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991). Petitioner has filed to establish cause for his procedural default. Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

## 6. Actual Innocence as Cause

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually

innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.). The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A showing that a reasonable doubt exists in the light of the new evidence is not sufficient. Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id*. at 329. This standard is referred to as the "*Schlup* gateway.*" *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here Petitioner proffers no new evidence of actual innocence. Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

**7. Summary re Exhaustion and Procedural Default**

Based upon the foregoing the undersigned has concluded that Petitioner has procedurally defaulted his state remedies on the claims raised in Grounds One (except the portion based upon a juror seeing Petitioner being placed in handcuffs and escorted away), Two and Four, and these claims must be dismissed with prejudice.

**B. MERITS OF GROUND 1: SHACKLING**

**Arguments** - In Ground 1, Petitioner argues that his constitutional rights were violated by juror misconduct. (Petition, Doc. 1 at 6.) In the Court's Order filed June 4, 2015 (Doc. 15), the Court construed this as re-asserting his claim that his federal rights were violated when a juror observed Petitioner being placed in handcuffs and escorted

away.

Respondents argue this claim is without merit because the record reflects the juror did not observe Petitioner shackled, and any such occurrence was brief,  the trial court issued curative instructions, and Petitioner has failed to show actual prejudice.  (Supp. Answer, Doc. 16.)

Petitioner has not replied to address the merits of this claim.

**Factual Background** – On the second day of trial, the court summoned counsel and addressed an assertion that a juror had seen the Petitioner being led away through the courtroom toward a door beyond which the holding cells were located.

> THE COURT: …Defendant, counsel are present. The jury is not yet present.
>
> Counsel, it is my understanding you've been advised that inadvertently the -- the defendant was apparently seen by one juror being led from court to back to the jail yesterday. And I wanted to put the issue on the record to see if either of you want to make a record or inquiry further.
>
> Mr. Conti?
>
> MR. CONTI [prosecutor]: No your.  Honor. I didn't even notice it, when he came in.  And, I spoke with Ian, my intern, who's taking a test this morning, he said, it  seemed to him he didn't even notice what was going on because there was a bunch of people standing around. And he walked in, grabbed his stuff and left. I just know he was in here as they were bringing him back there, and I don't know that they necessarily know - -
>
> THE COURT: You mean taking him from here back there?
>
> MR. CONTI: Taking him to the courtroom to the hallway, I guess, to the cell or whatever.
>
> THE COURT: Okay. Is that your understanding of what happened, Mr. Green?
>
> MR. GREEN [defense counsel]: Your Honor, all I know, as we walked in there, the guard said: Oh, my God, that's a juror.
>
> THE COURT: Okay.
>
> MR. GREEN: So I didn't see the juror, I didn't see what he did, where he went.
>
> THE COURT: Was he handcuffed yet or --
>
> MR. CONTI: No.
>
> MR. GREEN: No, no, he was still in street clothes.
>
> THE COURT: Okay.
>
> MR. GREEN:   And I was walking back with him and--
>
> THE COURT:  Do you see any issue?
>
> MR. GREEN: You know, I'm not sure that the jurors know that's the jail.  I mean, it could be a conference room for attorney and client --

(Supp. Ans., Doc. 16, Exhibit, R.T. 3/28/12 at 4-6.)   The trial court and counsel discussed whether the jury were or were not aware that Petitioner was in custody, whether the incident would be communicated to other jurors, and whether a curative instruction was appropriate.  The parties agreed that the jury would be reminded of the admonitions to not discuss the case prior to deliberations, to base their decision solely on the evidence, and that the instruction indicate it was not based upon any incident.  (*Id.* at 6-9.)  The trial court then admonished the jury:

> THE COURT: …Before we begin today, I want to again advise the jury of the portion of the admission [sic], and I'm not suggesting any of this occurred, I'm just affirming that -- to -- to advise you that you are not to discuss the case with each other until you've been given the final instructions and given a directive to go back in the jury room to deliberate.  And also you are to base your verdict solely on the evidence, the testimony, and the instructions of law; all right?

(*Id.* at 10-11.)

**Applicable Law** – "[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). In the absence of a particularized determination that shackling is justified, visible shackling in the courtroom is " 'inherently prejudicial.'" *Id.* at 635 (quoting *Holbrook v. Flynn,* 475 U.S. 560, 568 (1986)). That is, "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove 'beyond a reasonable doubt that the shackling error ... did not contribute to the verdict obtained.'" *Id.* at 635 ((quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

On the other hand, the Ninth Circuit has concluded that "visible shackling *outside the courtroom*—at least when the viewing is brief and accidental—is not inherently prejudicial; instead, a due process violation occurs only if the criminal defendant demonstrates actual prejudice." *Wharton v. Chappell*, 765 F.3d 953, 964 (9th Cir. 2014).

We explained long ago the reasons for the distinction between shackling in open court and shackling during transportation. Even the most unsophisticated juror knows that defendants may have to post bail and that some lack the resources to do this. Under these circumstances we cannot think that the emotional impact of seeing the defendant in custody is necessarily hostile-it may be quite the reverse. It is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this.

The distinction is also consistent with the Supreme Court's more recent reasoning in *Deck*. Unlike shackling in the courtroom, shackling during transport does not affect the defendant's ability to assist counsel during trial. Nor does it have any effect on the dignity of the courtroom; indeed, it could be perceived as increasing the dignity of the courtroom because a prisoner's shackles are removed for open-court proceedings. Admittedly, visible shackling during transportation might affect the jury's perception of the presumption of innocence, but that concern is mitigated greatly by the reasons discussed above—jurors know that, as a matter of routine, some defendants are in custody during trial and that security needs during transport demand restraints.

*Wharton*, 765 F.3d at 965 (internal quotations and citations omitted). *See also Ghent v. Woodford*, 279 F.3d 1121, 1133 (9th Cir. 2002), *as amended* (Mar. 11, 2002) (actual prejudice required when defendant only seen in handcuffs in the hallway or entering the courtroom and not while court in session).

**Application of Law to Facts** – Here, there is nothing to show that Petitioner was seen shackled by a juror. At most, there was testimony that he may have been seen by the lone, returning, juror while being led toward the exit from the courtroom which led toward the holding cells. This was not while court was in session, and there is nothing to suggest that the juror would have been aware of the reason for the departure through that exit, nor even to show that he had observed the defendant at all.

Moreover, Petitioner proffers nothing to suggest actual prejudice. The incident occurred after court had been adjourned. Thus, there was no interference with Petitioner's right to counsel, nor any denigration on the dignity of the court proceeding. Even if it were assumed that the juror could discern the custodial purpose behind the separate exit, the viewing was brief, isolated, and merely a part of Petitioner's transport. Further, the jury was aware Petitioner had been arrested, and could be presumed to conclude that he might be in custody. Thus, there is no reason to presume any impact on

22

1  the presumption of innocence.

2        Petitioner fails to show a denial of his due process rights, and Ground 1 must be

3  denied.

4

5  **C.  MERITS OF GROUND 3: WARRANTLESS SEARCH**

6        **Arguments** – In Ground 3, Petitioner argues that his constitutional rights were

7  violated when evidence seized during a warrantless search of his property was admitted

8  in evidence.

9        Respondents argue that consideration of this claim on habeas review is barred

10  under the limits on the exclusionary rule under *Stone v. Powell*.

11        Petitioner did not address the merits of this claim or the application of *Stone* in his

12  Reply.

13        **Applicable Law** -  Petitioner seeks to enforce the exclusionary rule, calling for

14  the barring from trial any evidence seized in violation of the Constitution.  "Exclusion is

15  'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned

16  by an unconstitutional search. The rule's sole purpose, we have repeatedly held, is to

17  deter future Fourth Amendment violations."  *Davis v. U.S.*, 131 S.Ct. 2419, 2426 (2011).

18  In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court recognized that habeas

19  proceedings are so far removed from the offending conduct that any deterrent effect is

20  outweighed by the societal cost of ignoring reliable, trustworthy evidence and the

21  judicial burden of litigating collateral issues.  Thus, the Court held that "where the State

22  has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a

23  state prisoner may not be granted habeas corpus relief on the ground that the evidence

24  obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.* at 494.

25        **Application to Petitioner** – Petitioner's attempts to rely upon the exclusionary

26  rule are barred under *Stone*.  Petitioner proffers nothing to suggest that there was not an

27  opportunity for a full and fair litigation of his Fourth Amendment claim.  The record

28  reflects there was.  Counsel filed a Motion to Suppress Evidence (Exhibit K) arguing that

the search of the property was not supported by a warrant or valid consent. The trial court conducted an evidentiary hearing on the motion, made factual findings, heard arguments of counsel, and denied the motion. (Exhibit L, M.E. 3/27/12.)   Petitioner fails to suggest what, besides a contrary outcome, was necessary to a full and fair hearing. "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

Accordingly, this claim is barred from consideration, and must be denied.


**D. SUMMARY**

Based upon the foregoing, the undersigned concludes that Petitioner failed to properly exhaust his state remedies on the claims raised in Grounds One (except the portion based upon a juror seeing Petitioner being placed in handcuffs and escorted away), Two and Four, those state remedies are now procedurally defaulted, and Petitioner fails to show cause and prejudice or actual innocence to avoid the procedural default. Accordingly, these claims must be dismissed with prejudice.

Also based upon the foregoing, the undersigned concludes that the portion of Ground One based upon a juror seeing Petitioner being placed in handcuffs and escorted away), and Ground Three are without merit and must be denied.


**IV.  CERTIFICATE OF APPEALABILITY**

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges

detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on the merits, and in part on procedural grounds. Under the reasoning set forth herein, the constitutional claims addressed herein on the merits are plainly without merit, and for claims addressed on procedural grounds, jurists of reason would not find the procedural rulings debatable.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.


# V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Ground One (except the portion based upon a juror seeing Petitioner being placed in handcuffs and escorted away), Ground Two and Ground Four of the Petitioner's Petition for Writ of Habeas Corpus, filed September 26, 2014 (Doc.  1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed September 26, 2014 (Doc. 1) be **DENIED** and that this action be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: August 18, 2015

14-2161r RR 15 05 27 on HC.docx

James F. Metcalf
United States Magistrate Judge

26